FARMER'S AND MECHANICS' BANK v. HENRY RATHBONE.

[Decided in 1852.]

*Bills of Exchange. Liability of acceptor. Effect of the release of the drawer. Rule in Equity.*

If a bill of exchange be drawn and accepted at a time when the drawer has an open account with the acceptor, for goods which he is in the course of sending to the acceptor for sale, and it appear to have been the understanding of the parties, at the time, that the bill was to be paid by the acceptor, and its amount be entered in the general account, it will be treated as a bill drawn for value, imposing upon the acceptor the primary obligation to pay it, and cannot be held an accommodation bill ; and its legal character, in this respect, will not be affected by any alteration of the balance of the account, nor by the fact, afterwards ascertained, that the drawer was indebted to the acceptor at the time of the acceptance.

The release of the drawer, in such case, by the holder, will not dischage the acceptor, but will be treated as a relinquishment, merely, by the holder, of so much security, which he had for the payment of the debt.

An endorsee, for value, of a bill of exchange, who became such before its maturity, and in ignorance that it was given for accommodation, has a right to treat all parties thereon, as liable to him according to their relative positions on the bill, and to regard the acceptor as the principal debtor, and the liability of the drawer as collateral; and this right is unaffected by any subsequently acquired knowledge, that the bill was given for accommodation. In such case a release of the drawer, by the holder, has no effect on the ultimate liability of the acceptor.

And in this respect the rule is the same in equity as at law.

ASSUMPSIT on two bills of exchange for $600. each. The declaration contained two counts, the first count was as follows :

"The defendant is attached to answer to the plaintiffs in a plea "of the case for that one Caleb E. Barton heretofore, to wit, on "the fifth day of October, A. D. 1844, at Charlotte, in said county "of Chittenden, according to the custom and usage of merchants "from time immemorial, used and approved of within this State, "made his certain bill of exchange in writing, bearing date the "day and year last aforesaid, and directed the said bill of exchange "to the said defendant, at number thirty-five, Water Street, New "York, and thereby, then and there requested the said defendant "thirty days after the date thereof, to pay to the order of one Sam-

" uel H. Barnes, the sum of six hundred dollars, for value re-
" ceived, and then and there delivered said bill of exchange to the
" said Samuel H. Barnes, which said bill of exchange the said de-
" fendant afterwards, to [wit, on the day and year last aforesaid,
" upon sight thereof accepted according to the usage and custom
" of merchants. And the said Barnes to whose order the pay-
" ment of the said sum of money in said bill of exchange speci-
" fied was to be made, after the making of said bill of exchange,
" and before the payment of said sum of money, to wit, on the day
" and year aforesaid, at the place last aforesaid, according to the said
" custom and usage of merchants, endorsed said bill of exchange,
" and then and there ordered and appointed the said sum of mon-
" ey in the same specified to .be paid to the said plaintiffs, and then
" and there delivered the said bill of exchange so endorsed as afore-
" said to the said plaintiffs, and the said plaintiffs aver that after-
" wards and when said bill of exchange became due and payable
" according to the tenor and effect thereof, to wit, on the seventh
" day of November, A. D. 1844, to wit, at number thirty-five, Wa-
" ter Street, in the city of New York, in the State of New York,
" one of the United States of America, that is to say, at Charlotte,
" aforesaid, the said bill of exchange was duly presented and shown
" for payment thereof to a clerk in the store of the acceptor, ac-
" cording to the said custom and usage of merchants, and payment
" of the said sum of money in said bill of exchange specified, was
" then and there duly required, but that neither the said defend-
" ant nor any person or persons on behalf of said defendant, did
" or would when the said bill of exchange was so presented and
" shown for payment thereof, as aforesaid, or at any time before
" or afterwards pay the said sum of money therein specified, or any
" part thereof, but then and there wholly neglected and refused so
" to do, of all which said premises said defendant afterwards, to
" wit, on the day and year last aforesaid, had notice, by means
" whereof according to said usage of merchants, he, the said de-
" fendant, then and there became liable to pay to said plaintiffs
" said sum of money in said bill of exchange mentioned, when he
" should be thereunto afterwards requested; and being so liable,
" he, the said defendant, in consideration thereof afterwards, to
" wit, on the day and year last aforesaid, at the place aforesaid un-
" dertook and then and there faithfully promised the plaintiffs to

"pay them the said sum of money, in said bill of exchange speci-"fied, when he should be thereunto afterwards requested."

The second count was for another bill of exchange for a like sum, of which the following is a copy:

" $600        CHARLOTTE, Vt. 25th Oct. 1844.
"Thirty days after date please pay to the order of Samuel H. "Barnes, six hundred dollars value received and charge to account "of        Yours, &c.      CALEB E. BARTON,
                                     Charlotte, Vt.

"To Mr. Henry Rathbone,   }
"35 Water Street, New York." }

And endorsed by the said Barnes, and accepted by the defendant.

The case was tried March Term, 1852—PIERPOINT, J., presiding. Plea, the general issue and trial by the court.

On the trial, the plaintiffs proved the drawing and endorsing of the bills declared upon, and their acceptance by defendant as averred, and that they were regularly discounted by them before their maturity; that the same were duly protested for non-payment, and due notice given to charge the drawer and endorser. It appeared that no payments had been made upon them other than what appear in statement, marked "B," which was as follows:

| | |
|---|---:|
| Draft due Nov. 7, 1844, | $600 |
| Protest, &c., | 1 75 |
| Interest to July 10, 1846, | 70 52 |
| Draft due Nov. 27, 1844, | 600 |
| Expense, | 1 75 |
| Interest to July 10, 1846, | 68 19 |
| | $1342 21 |
| July 10, 1846, Cash, | 612 |
| | $730 21 |
| Interest to March 17, 1848, | 86 28 |
| | $816 49 |
| March 17, 1848, Cash, | 500 |
| | $316 49 |

It appeared from the depositions, of one Ferguson, and Curtis Rathbone, introduced by defendant, that prior, and up to the acceptance of the drafts, Barton, the drawer, being in Charlotte, in this State, had been in the habit of consigning cheese to the defendant at

New York, for sale on commission and of drawing on the defendant for the proceeds, and that the latter was in the habit of accepting the drafts. That the bills in suit were so drawn and accepted, the defendant believing, when the last mentioned bills were accepted, he had enough of Barton's property to meet them; but that at their maturity, Barton was indebted to defendant on account apart from the bills in suit, and the latter had no property or funds in his hands of the former wherewith to meet them.

That the bills in suit are those charged October 11th and *30th*, 1844, in the defendant's account appended to the deposition of Ferguson, and were respectively accepted at those dates, and were charged over to Barton in the same manner in which the other acceptances were in the said account. The defendant also introduced in evidence the following instrument:

. " In consideration of five hundred dollars, to the Farmers and " Mechanics' Bank, paid by Caleb E. Barton, of Charlotte, the " said bank hereby wholly release and discharge the said Barton " from all liability or indebtedness to said . bank, which said bank " have or may claim to have for, or on account of, any and all notes, " checks, drafts or bills of exchange or acceptances to which Hen- " ry Rathbone is in any wise a party, either as maker, drawer, " endorser, or acceptor, or payee, or drawee, and also from all liabil- " ity on any paper which has been sued against said Barton, in fa- " vor of said bank or any other paper said bank may have against " Barton, previous to the 17th of March instant, which said Rath- " bone was or is any wise a party to.

" In witness whereof we have hereunto affixed the seal of said " Bank, at Burlington, this 30th day of March, A. D. 1848.

(Signed,)          " FARMERS AND MECHANICS' BANK.  [L. S.]
                            " By John Peck, Pres't."

The defendant also proved, that plaintiff's cashier impressed their seal thereon, and subsequently delivered the instrument to Barton's attorney, and that the plaintiffs were then as much in the habit of sealing instruments by impressing their seal upon the paper, as by sealing in any other way.

That July 10th, 1846, Barton paid plaintiffs the six hundred and twelve dollars entered in the the above statement "B," when they discharged a mortgage, which they held against him as drawer; and that he supposed he was thereby discharged from any further lia-

bility on the bills: but that the plaintiffs understood that he was not. Afterwards plaintiffs sued Barton, as drawer, and after suit and on March 17, 1848, rather than stand trial he paid five hundred dollars on the bills, the same entered in statement B, with the understanding that he was to be discharged as drawer; but there was no other agreement to discharge him, than what appears in said instrument, which was executed in pursuance of such understanding, and in consequence of the last payment, which sum last paid is the same mentioned in said instrument.

That on making said payment, the suit against him was withdrawn. The signature to the instrument was admitted to be that of John Peck's, then president of plaintiffs. The defendant also introduced the affidavit of his attorney, Ashbel Peck, filed in the cause, on a motion for continuance, March 25, 1847, in which affidavit Mr. Peck testified that he "made arrangements with the " defendant, to take the testimony of his book keeper in New York, " (defendant's brother,) to show that the drafts in suit are accom- " modation drafts, as between defendant and the drawer, Caleb E. " Barton, and that defendant had over paid said Barton, exclusive " of the drafts in suit, and that defendant was to go to New York, " and expected to go in a few days, and write me the time and place " and person before whom he would take the testimony. I was " then to give notice to plaintiffs, and have the testimony taken in " in season for this term, &c." But there was no proof, that the plaintiffs previous to the execution of the release to Barton, had notice of the contents of the affidavit, except so far as it was known to their prosecuting attorneys in this suit, to whom the same was actually known at the time of its filing.

It appeared that the plaintiff's discounted the bills to Barton, under his representations and in the belief that they were drawn on cheese consigned to the defendant, and supposed that the defendant had in his hands property or funds of Barton sufficient to meet them when they were discounted and accepted; and that plaintiffs never had any knowledge to the contrary, except so far as they were informed of the same by said affidavit and by the appearing at the taking of said depositions. It also appeared that there was no evidence tending to show that the defendant had any knowledge of, or consented to, the release of Barton previous to its execution.

The plaintiffs claimed judgment for the balance of said bills unpaid, upon these facts and the evidence referred to. The County Court rendered judgment for the defendant.

Exceptions by plaintiffs.

*Salmon Wires* and *W. W. Peck* for plaintiffs.

1. Assuming that as between the plaintiffs and defendant, the latter is to be regarded as the surety of Barton, nothing has transpired between the plaintiffs and Barton, the effect of which has been to discharge the defendant.

The discharge of the mortgage on the payment by Barton, July 10, 1846, of $612, did not have that effect, both because plaintiffs were then ignorant that defendant had endorsed for accommodation; and because, if they were not thus ignorant, the burden would rest upon defendant to show that the security was discharged either without receiving anything upon the debt, or an amount less than the value of the security. The creditor having relinquished it upon receiving part payment, it will be presumed that he received an amount equal to the value of the security.

*Again :* Barton was not discharged by the instrument of March 30, 1848, which was executed in consideration of the payment of $500, March 17, 1848.

The instrument is not in its form of execution a release being unsealed. *Warner* v. *Lynch,* 5 Johns. 164. *Bank of Rochester* v. *Gray,* 2 Hill, 227. *Farmers and Mechanics' Bank* v. *Haight et al.,* 3 Hill 493. The instrument is therefore merely a paid instrument.

2. If, however, Barton has been discharged, the plaintiffs knowing at the time, that defendant was an accommodation acceptor, the latter was not thereby discharged.

As to a holder for value and in good faith the bill taken according to its legal import is the only evidence of the relation of the parties to it, so far as their relation depends upon the bill, extrinsic evidence, tending to modify these, is inconsistent and inadmissible. The acceptance admits that the drawer has funds in the hands of the acceptor, which the latter is bound to pay under his direction. It is equivalent to a declaration to the holder, that he is the principal debtor, and is to be so treated. The discharge of an intermediate party could not operate to discharge the acceptor,

as an accommodation acceptor, without allowing extrinsic matter to reverse the relations indicated by the instrument. *English* v. *Darly,* 2 Bos. & Puller. *Claridge* v. *Dalton,* M. & S. 226. *Wallett* v. *Thompson,* 5 Esp. 178. These cases sustain the position of the plaintiffs.

But in *Laxton* v. *Peat,* 2 Camp. 185, an accommodation acceptor was held to be discharged by the discharge of the drawer, for whom the acceptance was furnished; the holder knew the fact of the accommodation, when he took the bill. This case is an opposing case, provided there is no distinction between a case where the holder has accommodation when he takes the bill, and where he has not such knowledge until afterwards and prior to the discharge. This case has been rejected by all the subsequent English authorities, 3 Camp. 281. 4 Taunt. 730. *Kennison* v. *Cork,* 3 Camp. 362. *Fentum* v. *Pocock,* 5 Taunt, 191. 1 Barn. & Adolp. 703. 3 Barn. & Adolp. 41 and 36. Thompson on Bills, cited in Story on Notes, page 524, (note 1.)

The law as claimed by the plaintiffs has been uniformly recognized in the United States. *In re Babcock,* 3 Story, 393. *Church* v. *Barlow,* 9 Pick. 547. *Commercial Bank* v. *Cunningham,* 24 Pick. 270. *Bank of Montgomery* v. *Walker,* 9 S. & R. 229. 1 U. S. Digest, 429, note 239. 4 U. S. Digest, 292, note 97. Story on Notes, 524 note 1. 7 U. S. Digest 412, note 47.

The effect of the discharge of Barton upon the liability of defendant must be determined by the law of New York, the contract of acceptance having been made there. Story on Bills, § 158, 164, 265.

By the law of that State, defendant was not discharged by the discharge of Barton. *Trimball* v. *Thorn,* 16 Johns. 152. *Wood* v. *Jefferson County Bank,* 9 Cowen 194. *Brown* v. *Mott,* 7 Johns. 361. *Seabury* v. *Hungerford,* 2 Hill, 80. *Murray* v. *Judah,* 6 Cowen, 484. 3 Kent's Com. 86 and note A.

If defendant was discharged, he should have plead the matter as *puis darrein continuance.*

The general issue admits only of matters of defence existing at the time of its being pleaded. In the present case the general issue must be treated as having been plead as early as March Term, 1847. And the discharge was not granted until afterwards. Gould on Pl. chapt. 6, § 46, 49, 122, 124.

If defendant was entitled to prove the discharge, it could operate only as a satisfaction of the damages after suit, and the plaintiffs were entitled to a nominal judgment.

*A. Peck* and *G. F. Bailey* for defendant.

The case shows, that Barton, the drawer, for whom plaintiffs discounted the bill, was released by the plaintiffs. The release is operative to discharge Barton.

The case also shows, that the defendant was an accommodation acceptor, or that he had no funds of Barton's in his hands, and that it was the duty of Barton to pay the bills in suit, and that this was known to the plaintiffs prior to, and at the time of, the execution of the release, and that defendant was defending this suit upon this ground, in connection with a previous release to Barton, by the plaintiffs. 1. Notice to the attorney of the plaintiffs in this suit of the filing of the affidavit of the defendant's attorney, and its contents more than a year before the execution of the release was notice to the plaintiffs. 2. The appearance of the plaintiffs at the taking of the depositions, which disclosed all the facts was also notice to the plaintiffs. 3. The case shows, that the court on the evidence decided for defendant. The above evidence tends to show *actual notice* to the Bank, and the court must presume the court below found *actual notice* to the Bank. Every fact necessary to sustain the judgment below, which there was any evidence tending to prove, must be taken to have been found by the court below. *Ashley* v. *Nailie*, 2 Vesey 367. 2 Lead. Cases in Equity, Part 1, 122, 139.

The release to Barton, the drawer, after notice that the defendant was an accommodation acceptor, discharged the defendant from all liability upon the drafts. The general principle cannot be denied, that a discharge of a principal on a promissory note, or an agreement with him for an extension of time founded upon a good consideration, by the holder who is acquainted with the true relation of the parties to the instrument, at the time he takes it, operates as a discharge of the surety. The rule of liability as respects an accommodation acceptor, when the drawer is discharged by the holder, is the same as that of the surety upon a promissory note, in case of a discharge of the principal, or an agreement with them for an extension of time. An accommodation acceptor is but

a surety, and is entitled to the same rights and privileges as a surety on a promissory note. The actual relation of the parties may be inquired into and proved by parol; it is not the apparent but the actual relation that governs, when the holder has notice of the actual relation at the time he executes the discharge. Such evidence is not to vary the written contract, but relates to a matter collateral to the contract, and is to enable the court to determine what effect is to be given to the new agreement by the plaintiffs, without the consent of the surety. 2 Greenleaf's Ev. 165, § 201. *Grafton Bank* v. *Hunt*, 4 N. H. 221. *Harris* v. *Brooks*, 21 Pick. 195. *Carpenter* v. *King*, 9 Met. 511. *Pitkin* v. *Flanagan*, 23 Vt. 160. *Adams* v. *Gregg*, 3 Com. Law 461. *Sergeant* v. *Appleton*, 6 Mass. 85. *Ex-parte, Glendenning*, 1 Bhh. 517. *Laxton* v. *Peat*, 2 Camp. 185.

The rule of law is the same, whether the holder knows the true relation of the parties at the time he takes the instrument, or is advised of it afterwards. The reason of the rule is founded in the principle that a discharge of the principal, on an agreement with him for an extension of time is in violation of the rights of the surety, whether the holder knows the true relation when he takes the instrument, or this fact comes to his knowledge afterwards. *Wheat* v. *Kendall*, 6 N. H. 504. *Branch Bank* v. *James*, 9 Alabama 469.

It is true that a *bona fide* endorser for value of an accommodation bill or note made for the purpose of negotiation, may hold the parties according to their relation apparent upon the instrument, even if taken with notice that the parties stand in a different relation, so long as he makes no new agreement; but if such holder makes an agreement with one apparently principal, but known at the time to be but surety, such holder is bound by the actual relation of the parties and thereby discharges the surety, and it makes no difference at what time the knowledge comes to the holder, provided it is before he makes the agreement. There is no distinction in principle between an accommodation acceptance and any other case where the surety is upon the instrument apparently principal.

The opinion of the court was delivered by

ISHAM, J. This action is brought on two bills of exchange,

drawn by Caleb E. Barton on the defendant, Henry Rathbone, of the city of New York; both of which were duly accepted, and before maturity, were discounted, and transferred by endorsement, to the plaintiffs. When the bills matured, they were dishonored, duly protested, and notice thereof given to the drawer.

On the trial of the case, at the circuit, the defendant insisted, that the bills were accommodation bills; and, upon the facts stated in the bill of exceptions, he now insists, that the bills are of that character, that the drawer is the person primarily liable, that the acceptor stands as his surety, and that the release of the drawer, by the plaintiffs, operates as a discharge of the defendant, as acceptor. It is admitted, that if these bills are not accommodation bills, but are really bills for value, the release will not affect the liability of the acceptor. It will discharge all persons intermediate between the holders and drawer, but not those prior on the bills, nor those on whom rests a primary or absolute liability to pay them. *English* v. *Darby*, 2 B. & P. 61. BAILEY, J., in *Claridge* v. *Dalton*, 4 M. & S. 226. Chit. on Bills, 451.

We are not satisfied that these bills are to be treated as accommodation papers. It is true the fact is found in the case, "that at the maturity of the bills, the drawer was indebted to the acceptor on account, apart from the bills in suit, and that the latter had no funds in his hands of the former, wherewith to meet them." But, in connection with this statement, it equally appears from the exceptions, that during the season of 1844, the drawer, at different times, consigned to the defendant as commission merchant, for sale on his account, a quantity of cheese, the gross proceeds of which amounted to $7848 78; and from the statement in the account of sales we perceive, that a much larger amount than the sum of these bills, was realized therefrom, after these acceptances were given. The account arising from the sale of this property commenced in July, 1844, and closed in November of that year. There has been no statement of that account rendered, or balance ascertained by the parties. As between them, the whole account remains open and subject to their future liquidation. While this account was accruing, these bills were drawn and accepted, obviously and with the understanding, that they were to be paid by the defendant, and the amount so paid be entered into their general account.

During that period, they doubtless anticipated, that the balance would be sufficient to pay these bills, and have been respectively disappointed in the amount finally realized therefrom; so that there is now a balance due the acceptor, as stated in the account of sales. But as these bills, at first, were drawn upon property consigned to the acceptor, and he accepted them with the same means of knowledge, which the drawer had, and thereby assumed the primary obligation to pay them, there is no propriety in treating the bills otherwise than as creating obligations of that character, after they have passed, in due course of business, into the hands of an endorsee. In so treating them, we are manifestly carrying into effect the mutual intention of the parties when the bills were drawn and accepted; for it is distinctly stated in the case that both the drawer and the drawee supposed and believed, that there were funds sufficient in the hands of the drawee to pay them at maturity, and under that belief the drawer made such representations to the plaintiffs, at the time of their endorsement and discount.

The legal effect and character of bills of exchange, so drawn and accepted, is not changed, or affected, by any alteration of the balance of the account, nor even by the fact if it should be afterwards ascertained, that there was an indebtedness, at the time of the acceptance, from the drawer to the acceptor. This principle is fully illustrated by the case of *Bagnall* v. *Andrews*, 7 Bing. 217. Indeed, the facts in that case, and the principles there established, have such a direct application to this case, that we cannot consider these bills otherwise than as bills for value, without entirely disregarding the authority and principles of that decision. In that case when the bill was drawn, the drawer had an open account with the acceptor, for goods which he was in the course of sending to him for sale; neither of them at that time knew the state of the account; " *and it afterwards turned out, that the drawer was, at the time of the acceptance, indebted to the acceptor, instead of the acceptor being indebted to the drawer.*" Before the bill became due, the drawer became bankrupt and endorsed the bill to the plaintiff, who was ignorant, that an act of bankruptcy had been committed. The drawer being called as a witness, was objected to as being interested, on the ground that this was an accommodation bill, and that if the plaintiff recovered, he would be responsible to the defendant, not only for the amount of the bill, but for the costs of

that suit. TINDALL, Ch. J., after remarking that such consequences would follow, if this was an accommodation bill, and that the witness would be incompetent, observed, that " we think, upon " the facts in the case, the bill was not an accommodation bill. At " the time it was drawn, the drawer had an open account with the " defendant for goods sent, and which he was then in the course " of sending to him for sale. The drawer might, at that time, " reasonably expect, that the acceptor would pay the bill out of " funds that might be in his hands, when the bill arrived at matu- " rity ; for the evidence is express, that, at the time the bill was " drawn, neither the drawer, or acceptor, knew the state of the " account. A bill so drawn and accepted cannot be treated as an " accommodation bill, nor, consequently, is there any implied obli- " gation, on the part of the drawer, to indemnify the acceptor " against the costs of any action which may be brought against " him." 1 Phil. Ev. 61. 9 S. & R. 237.

If that case is to be treated as sound in principle, it makes a final disposition of the case under consideration ; for under that authority, these bills cannot be considered as accommodation bills, but must be treated as bills for value ; the acceptor being the party primarily liable and the drawer considered only as his surety, or guarantor. In such case it was properly remarked, that the release of the drawer was a relinquishment merely of so much security, which the plaintiffs had for the payment of the debt, and which in no event can affect the liability of the acceptor.

It is very evident, also, that the plaintiffs could have sustained no action against the drawer of these bills, unless they had been duly protested and notice given. This principle is founded on the consideration, that a primary liability for their payment rests only upon the acceptor; while that of the drawer is contingent and collateral, and arises upon the default of the acceptor. The necessity of protest and notice, in such cases, is not avoided by a fluctuating balance in their accounts, nor even by the fact, where there exists an open account, that there is an indebtedness from the drawer to the acceptor. *Orr* v. *Megennis,* 7 East. 359. *Blackburn* v. *Doren,* 2 Camp. 503. *In re Brown,* 2 Story's C. C. 521. Story on Bills, § 311. 2 Smith's Lead. Cas. 29. Smith's Merc. Law, 315. 15 Pet. 393.

But if these bills are to be regarded strictly as accommodation

bills, the same result, we think, must follow. In such case, it is insisted, that the drawer is the person primarily liable; that the acceptor is to be treated as his surety, and that the holder of the bills, is bound so to regard and deal with them, notwithstanding the terms of the bill, whenever he has notice, that the acceptance was for accommodation; whether that notice was received at the time he took the bills, or at any subsequent period.

It is proper to observe, that this question does not now arise between the drawer and acceptor; as between them, the consideration may be inquired into and the true relation of the parties shown; but the question is presented in a case between the acceptor and an endorsee for value, without notice, that the bill was for accommodation, at the time he became the holder. When these bills were received by the plaintiffs, they were invested with those legal rights, and became subject only to those duties, that arose from what appeared on the face of the bills. Their legal effect and the relative liability of the drawer and acceptor could not be changed or altered by any fact not then appearing.

These principles have a peculiar application to bills of exchange, as they are designed for commercial purposes; and their application is required to impart to them that credit and currency, which is necessary to insure the purposes, for which they were intended. At the time the plaintiffs became endorsees, they had the right, on the one hand, and were bound, on the other, both at law and in equity, to regard the acceptor as primarily liable, and the drawer as his surety; they could have released, compounded with, or given time to the drawer, without in any way affecting their right to hold the ultimate liability of the acceptor. Story on Bills § 429, 430. 15 Pet. 393. 1 M. & W. 374. Such being their right at the time they became the holders of the bills, there is no propriety or authority in saying, that that right can be subsequently changed, or affected, by a mere notice from the acceptor to the holder, that the drawer had neglected to provide funds for the payment of the bills; or by any act of the drawer and acceptor, to which the plaintiffs were not a party, and to which they have never given their assent. Theob. on Pr. & Sur. 216.

The plaintiffs, as holders of these bills, were not subject to any of the equities existing between the original parties, and without their assent those equities cannot be imposed upon them. The case

of *Mallet* v. *Thompson*, 5 Esp. 178, was an action by an endorsee against the maker of an accommodation note for the payee. The holder received part payment, under a composition, from the payee, and covenanted not to sue him, which is a virtual release, knowing when he received the bill, that it was given for accommodation. Lord ELLENBOROUGH ruled, that the maker was liable, notwithstanding the payment and release; for his liability on the face of the note was primary and principal, and that of the endorsers was collateral and secondary; and whatever may be their liabilities between themselves, such was their liability to the holder. It was also held, that the release would have no effect between the maker and payee; for whatever the maker was compelled to pay he might call upon the payee to repay; the release in no way disturbed their relations. On the application of the same rule to this case, whatever the acceptor may be compelled to pay, he can call upon the drawer to repay, notwithstanding the release; for their relations are not disturbed by its execution. It is evident, also, in this case, from the release itself, that a discharge of the bill was not intended by the parties, but simply a release of the drawer, by the holders, from any farther claim which they had personally on him, leaving the holders to pursue their remedy against the acceptor, as the party primarily liable. Story on Pr. Notes, § 423.

In the case of *Laxton* v. *Peat*, 2 Camp. 185, and *Collot* v. *Haights*, 3 Camp. 281, a different doctrine was applied to accommodation bills, where the holder, at the time he received the bills, knew that they were for the accommodation of the drawer. Lord ELLENBOROUGH remarked, " that as it was an accommodation bill, of which all parties had notice, the acceptor can only be considered as a surety for the drawer;" and the acceptor was discharged by time being given the drawer. If these cases can be sustained on principle, they have no application to this case; for it may be said with more propriety, that if one take a bill of exchange, knowing at the time that it was for accommodation, he thereby assents to receive and hold it subject to that equity of the parties; while no such suggestions can be made in this case, as these plaintiffs had no such notice, when the bills were received and discounted.

The doctrine of those two cases was, however, subsequently shaken by Justice GIBBS, in *Kerrison* v. *Cooke*, 3 Camp. 362, and

Farmers and Mechanics' Bank *v.* Rathbone.

was afterwards overruled in the Common Pleas, in the case of *Fentum* v. *Pocock,* 5 Taunt. 192, in which MANSFIELD, Ch. J., observed " that the case of *Laxton* v. *Peat* was the first, in which it was held, that the acceptor was not the first and last person compelled to pay the bill to the holder; and that they were compelled to differ, and hold, that it is impossible to consider the acceptor of an accommodation bill in the light of a surety for the drawer; and that if the holder had known, in the clearest manner, that at the time of giving the bill, it was for accommodation, it would make no manner of difference." With this view of the case, HEATH, J. and CHAMBRE, J. agreed. It will be at once perceived, that in this case, the acceptor was held as the principal and primary debtor *on an accommodation bill, known to be such by the holder, when he received it*; and that act of the holder, which would have discharged a surety, was held not to affect his liability. We are not called upon, in this case, to approve or disapprove of the doctrine of that case, to the extent to which it was carried; but it is a decided authority for saying, that an endorsee for value, of a bill of exchange, who became such before its maturity, and in ignorance that it was given for accommodation, has a right to treat all parties thereon as liable to him according to their relative positions on the bill, and to regard the acceptor as the principal debtor, and the liability of the drawer as collateral; and that this right is unaffected by any subsequently acquired knowledge, that the bill was given for accommodation. In such cases it is regarded as a mere truism to say, that a release of the drawer, by the holder, has no effect on the ultimate liability of the acceptor.

The case of *Fentum* v. *Pocock,* has been sustained and approved by the subsequent cases in England; *Price* v. *Edmonds,* 10 B. & C. 584. *Nichols* v. *Norris,* 3 B. & Ad. 41. *Harrison* v. *C——,* ib. 36. *Rolfe* v. *Wyatt,* 5 C. & P. 181. 1 M. & M. 14. *Yallop* v. *Ebers,* 1 B. & Ad. 703. It is to be observed, also, that the same view of the subject is entertained by the different elementary authors. Chit. on Bills, 344. Smith's Merc. Law, 332. 3 Kent's Com. 104. Bayley on Bills, 364. Story on Pr. Notes, § 418, 423.

This subject has arisen before many of the courts in this country, and the rule is generally sustained, " that the parties to a bill, or note, are bound by the character which they assume upon the

face of the bill ; if by that they are liable as *primary debtors*, or as *principal*, then, *as to the holders*, they are bound as such; and his knowledge, at the time when he takes the bill, that they or either of them are accommodation parties, will not vary the case." *Montgomery Bank* v. *Walker*, 9 Serg. & R. 229.    S. C. 12 Serg. & R. 382.    *White* v. *Hopkins*, 3 Watts & Serg. 99. *Lewis* v. *Houchman*, 2 Bau. 416.    *Commercial Bank* v. *Cunningham*, 24 Pick. 275.    *Church* v. *Barlow*, 9 Pick. 551.    *In re Babcock*, 2 Story's C. C. 398.    *Sanford* v. *Lambert*, 2 Blackf. 137.    *Clopper, Admr.* v. *Union Bank of Maryland*, 7 Har. & I. 92.

In the case of *Claremont Bank* v. *Wood*, 10 Vt., 582, where several, some of whom were sureties, signed a note, " *each as principals*," and promised to pay, it was held, that as to the holders, they were to be regarded as principals, and not as sureties ; and yet the primary liability of the acceptor, and the secondary liability of the drawer, is as expressly set forth on these bills, as if it were written out in full over their respective signatures.    In either case, to vary their respective liabilities, as they have assumed them on the face of the bills and note, would be to vary and control their intended operation, and, in effect, to enforce a contract, which the parties never made.

On this subject it is important to observe a material distinction between joint and several promissory notes, or obligations, and bills of exchange, or notes, on which the parties have assumed only successive liabilities.    In the former case, as between the makers and the holders, who at the time received the note with notice of the circumstances, under which it was given, the strict relation of principal and surety may exist, and evidence of that fact is not considered as contradicting its specific provisions, but as consistent with its terms ; and the right of contribution, arising out of that relation, exists between them.    2 Am. Lead. Cas. 289, 303, in notes.    But the drawer, and acceptor, and endorsers, of a bill or note, have not assumed a joint and several liability ; neither are they strictly sureties; but are liable to each other, in the order of their becoming parties ; and when *the action is on the bill, or instrument*, creating such successive liabilities, by an endorsee for value, without notice that the bill was given for accommodation, such testimony is inadmissable for the purpose of converting their successive liabilities into a joint and several obligation, or placing

them in the relation of principal and surety. The testimony clearly contradicts the express provision of the bill, and materially changes its legal effect. Unquestionably those liabilities may be changed, as between the parties, by an express contract to that effect, which may be enforced between them. But this in no way affects the rights of a holder, who, at least, became such in ignorance of that arrangement. Under such circumstances, the holder has only to look to the bill itself and the genuineness of the signatures, to ascertain the nature and extent of the liability of the parties thereon; and they are liable to him in the successive order, in which their names appear upon the face of the bill. *McDonald* v. *Magruder*, 3 Pet. 471. *Flint* v. *Day*, 9 Vt. 328. *Brown* v. *Mott*, 7 Johns. 360.

This doctrine is sustained in Story's Treatise on Promissory Notes, in which, sec. 418, he observes, "that the strong tendency of the more recent authorities, is to hold that, in all cases, the holder has a right to treat all the parties to a bill as liable to him exactly to the same extent and in the same manner, whether he knows, or not, the note to be an accommodation note; for, as to him, all the parties agree to hold themselves primarily, or secondarily, liable, as they stand on the note; and that they are not at liberty, as to him, to treat their liability as at all affected by any accommodation between themselves." And in section 483, he farther says: " Nor would it make any difference in the case, that the released party was, in point of fact, the party ultimately bound to pay the note, and that the other party was a mere accommodation maker, payee, or endorser, for his benefit; or at least, it would not make any difference, unless the fact of its being such accommodation note were, *at the time of receiving the note*, and not *merely at the time of the release*, known to the holder." Story on Bills, § 291, 368, 432, 434. Chancellor KENT, 3 Kent's Com. 104; also observes, " that the acceptor of a bill is the principal debtor, and the drawer the surety, and nothing will discharge the acceptor, but payment or a release. Accommodation paper is now governed by the same rules as other paper. This is the latest and the best doctrine, both in England and this country."

As these bills were *received and discounted* by the plaintiffs *before their maturity, without notice that they were for accommodation*, we are satisfied, from the authorities, that they had a right to

treat the acceptor as the principal debtor, and the drawer as liable only on his default. In such cases there is no difference between accommodation bills, and bills for value : in either case, a release of the drawer from any farther liability to the holder, will have no effect, as a discharge of the acceptor from his primary liability on the bill ; and this right, so to treat the parties on the bill, remains unaffected by any notice subsequently given, that the bill was for accommodation.

It is insisted, however, that the release of the drawer will in equity discharge the acceptor, and that the principles, which prevail in that court, are now equally available at law. From an examination of the cases in chancery, we entertain a decided conviction, that the same principles, on this subject, prevail in equity, as at law. If any diversity of opinion exists in that court, on this question, it has arisen more from a misapprehension of the rule at law, and a desire to conform to the principles there established, than from any rules prevailing in equity, at variance with them. There is much propriety in this ; for the principles regulating bills of exchange have their origin in mercantile usage, and have been adopted to meet the exigencies and wants of commercial transactions ; it is therefore equally the policy of courts of equity, as of courts of law, to make the application of, and enforce those principles, in relation to these securities, which experience has found necessary, to preserve their negotiability and credit.

In the case of the *Bank of Ireland* v. *Beresford*, 6 Dow, 233, Lord ELDON expressed his opinion of the case of *Fentum* v. *Pocock*, and observed, that, " if it went on the principle, that inquiry is not to be made into the knowledge of the party, but that all shall be taken as appearing on the face of the bill, I think it a most wholesome doctrine." The case is important only, as showing the individual opinion of Lord ELDON on that question, and as showing that no different rule had then prevailed in chancery. In the case of *Glendenning, ex parte*, 1 Buck, 517, Lord ELDON refused to adopt the principle of the decision of *Fentum* v. *Pocock*, and recognized the general doctrine, as held in *Laxton* v. *Peat*. That was the case of an accommodation acceptance, *and known to be such, by the holder, when he received the bill*. We are, therefore, not called upon to approve or disapprove of the doctrine of that case, for in this case, the plaintiffs had no notice, when the bills were received and discounted, that they were for accommodation.

Farmers and Mechanics' Bank v. Rathbone.

If the plaintiffs in this case had received the bills, with knowledge that they were given for accommodation, we do not say but that the defence would be available ; for when one takes a bill, even before maturity, with notice of a given fact, it is not unreasonable, that he should be charged with the consequences that result therefrom, as if the bill had been received overdue.   But that principle does not apply, when the bill is taken before maturity, without notice, and for value ; for the bill is then held independent of all equities existing between the original parties ; and Lord ELDON, in that case, no where intimates, that the principle would have such an application.   It is only to the case of an accommodation bill, *and known to be such by the holder, when he received the bill*, that he made the application of that rule.

The case, however, which should and does exert a controlling influence in our decision of this case, is that of *Harrison* v. *Courtald*, 3 B. & Ad. 36.   That case, it will be perceived, was sent from chancery, by the Master of the Rolls, for the opinion of the court of King's Bench.   This circumstance, alone, creates the inference, that in relation to bills of exchange, on which the parties have assumed successive liabilities, the principles of equity are the same as at law, and that, if the acceptor of these bills is not discharged at law, he would not be in equity ; for it would be an idle proceeding for chancery to send a case to a court of law, to ascertain the principles prevailing there, unless those principles have equal application in chancery.   In that case, as we have assumed in this, the bill was accepted for the accommodation of the drawer, and was endorsed for value, before its maturity.   In that case, as in this, the holder *was ignorant, at the time he received the bill*, that it was given for accommodation, but was *afterwards informed* of that fact, *before the act was done*, which the acceptor claimed operated as his discharge. It will at once be perceived, how very similar are the two cases, in every important particular.   On the hearing of that case, the decisions at law and in equity were considered ; and all the judges, Ch. J. TENTERDEN, and PARKE, TAUNTON and PATTERSON, Justices, certified to the court of chancery, that the acceptor was liable, on the bill, the same as on a bill for value.

Whether, therefore, we apply to this case the principles prevailing in equity, or at law, the result is the same.   The plaintiffs having no notice, at the time they received the bills, that they were

given for accommodation, had a right to treat the drawer as collaterally liable thereon, and the acceptor as the principal and primary debtor; and this right of the holder remains unaffected by any subsequent knowledge which he may have, that they were for the accommodation of the drawer. Under such circumstances, the release of the drawer, in no way affects the liability of the defendant, as acceptor. This view of the case renders it unnecessary to pass upon other questions, which were urged in the argument of the case.

The result is, that the judgment of the county court must be reversed, and the case remanded.