CLOPPER's Adm'r. *vs.* THE UNION BANK OF MARYLAND.—June, 1826.

The execution of a mortgage, by an accommodation endorser to the holder, to secure the payment of a promissory note, does not extinguish the note in relation to any of the parties to it.

Where a promissory note was drawn by C, in favour of P, and by him endorsed to the holder, and P, after the note fell due, gave the holder his own note for the debt—*Held,* that the first note was not extinguished, unless the last was received by the holder, in substitution and in satisfaction of the first.

Giving time to the endorser of a promissory note, drawn and negotiated, with the knowledge of the holder, for the accommodation of the endorser, will not discharge the maker. In relation to the effect of giving time in cases of notes and bills of exchange, there is no distinction between real and accommodation paper.

A covenant not to sue generally, without any limitation as to time, is in law a release, and may be pleaded as such, but a covenant not to sue for a limited period, cannot be pleaded in suspension of a creditor's action; but if he sues upon it, the debtor's remedy is an action upon the covenant. But this latter doctrine does not extend to actions of *assumpsit;* and therefore, where the holder of a note, in consideration that the accommodated endorser, would give him a mortgage to secure its payment, stipulated that he would not, for a definite period sue the maker, and suit was brought against the maker before that period had passed, it was held that it could not be maintained, though the maker was no party to such stipulation.

APPEAL from *Baltimore* County Court. *Assumpsit* brought on the 9th of March 1820, by the Appellees, the plaintiffs in the court below, against the Appellant's intestate. The declaration contained two counts—one on a promissory note drawn on the 23d of June 1819, by *Clopper,* in favour of *Isaac Phillips & Co.* for $3,000, payable sixty days after the date, and endorsed by *Phillips & Co.* to the plaintiffs. The other for money lent and advanced. The defendant pleaded *non assumpsit,* and issue was joined.

At the trial it was admitted that the note, upon which this action was brought, was one of eight notes, drawn by *Andrew Clopper,* in favour of and endorsed by *Isaac Phillips & Co.* and negotiated at the *Union Bank of Maryland,* for the accommodation of the endorsers, each for $3,000, and payable at different periods respectively, from the 17th of June to the 12th of August, 1819; that previous to the falling due of any of these notes, on the 16th of June 1819, *Isaac Phillips* conveyed, by deed of mortgage, to the bank, his dwelling-house, and lots attached thereto, as a collateral security for the payment of the notes, and that the bank in the said mortgage allowed *Phillips* three years for the redemption of the property mortgaged. That on the 17th day of June 1819, the day on which the first of the notes fell due, the cashier of the bank wrote the following letter to *Clopper,* the drawer: "This bank hold eight notes, drawn by you, in favour of *Isaac Phillips & Co.* for their ac-

commodation, each for $3,000; the first of these notes falls due and payable this day, the residue of the notes become payable as follows:" The 2d note for $3,000, payable 21—24 June, 1819; the 3d for 3,000, on the 28—1 July; the 4th for 3,000, on the 5—8 July; the 5th for 3,000, on the 12—15 July; the 6th for 3,000, on the 19—22 July; the 7th for 3,000, on the 2—5 August, and the 8th for 3,000, on the 9—12 August; "as security in part, or as collateral security for payment of your notes, *I. Phillips* has conveyed, by deed of mortgage to this institution, his dwelling-house and lots attached thereto; the bank have given three years for the redemption thereof. , I am instructed by the board to make you acquainted with these circumstances, and to inform you that your notes, as above recited, if not paid, will be held as security to the *Union Bank of Maryland,* and that if there be hereafter any deficiency, the bank will hold you accountable for the same." That the above letter was delivered on the same 17th of June 1819, to *Clopper,* to whom it was addressed. That on the 9th of September 1819, the following letter was addressed by the cashier of the bank to *Isaac Phillips & Co.* and received by them. "*Union Bank of Maryland,* September 9th, 1819. The board of directors of the *Union Bank of Maryland,* have resolved that a reduction shall take place upon accommodation paper, commencing on the 1st of November next, to be paid at the rate of ten *per cent.* in every sixty days, upon the sum required to be paid; the reduction required from you will be $12,000." That the said several notes successively falling due on the several days mentioned above, were not paid by *Clopper* or *Phillips & Co.* and that neither of them were ever renewed at the bank, except that the first was delivered up to *Phillips & Co.* on receiving from them the first of eight promissory notes, given in pursuance of the aforesaid deed of mortgage; and that the proceeds of the mortgage were subsequently applied, by arrangement, to the extinguishment of part of the notes, of which the note, upon which this action is brought, was not one. That the following is a correct copy of the mortgage deed referred to. "This indenture made this 16th day of June 1819, between *Isaac Phillips,* merchant, of the city of *Baltimore,* and state of *Maryland,* of the one part, and the President and Directors

of the *Union Bank of Maryland*, of the city of *Balti-more*, and state aforesaid, of the other part, witnesseth," &c. "And whereas the said *Isaac Phillips* is indebted to the said president and directors of the *Union Bank of Maryland* twen-ty-four thousand dollars, upon eight promissory notes, for three thousand dollars, drawn by *Andrew Clopper*, to and in favour of *Isaac Phillips* and *Company*, and by them endorsed and discounted at said bank, for the use and accommodation of the said *Isaac Phillips* and *Company*; and to secure the payment thereof, with interest thereon, the said *Isaac Phillips* hath agreed to execute these presents. Now this indenture wit-nesseth, that the said *Isaac Phillips*, in consideration of the said debt or sum of twenty-four thousand dollars, due and owing," &c. "and for the better securing the payment thereof, with interest," &c. "and also in consideration of the further sum of five dollars," &c. he conveyed to the president and di-rectors, &c. sundry parcels of land, &c. "provided always, and these presents are upon this express condition, and it is hereby declared to be the true intent and meaning hereof, and of the said parties hereunto, that if the said *Isaac Phillips*, his heirs, executors or administrators, or any of them, do and shall, within the term of three years from the date hereof, well and truly pay, take up and retire, all and every the promissory notes herein before mentioned, amounting together as aforesaid to the sum of twenty-four thousand dollars, which have been negotiable as aforesaid, at the *Union Bank of Maryland*, for the use of the said *Isaac Phillips* and *Company*, and any and all other notes that may at any time hereafter be substituted for and in lieu of the said notes already negotiated as aforesaid, by way of extending, in point of time, the said accommoda-tion in whole or in part, and shall, in the mean-time, and at the expiration of every sixty days in succession, pay at the said *Union Bank of Maryland* the discount or interest upon the said eight promissory notes, or such part of them as shall, from time to time, remain unpaid, then this indenture, and every clause, matter and thing, herein contained, shall cease, determine, and be absolutely void, and of no effect in law or equity, any thing herein contained to the contrary thereof, in anywise notwithstanding." That upon this deed of mortgage

a bill of foreclosure having been filed on the 30th of August 1820, there was a decree, by consent, on the 19th of December 1820, for the sale of the mortgaged property, under which decree it was sold on the 2d of March 1821, for the sum of $12,000, and that sum was applied to the partial extinguishment of the said accommodation loan. It is also admitted, that this suit was instituted on the last but one of the first mentioned notes of *Clopper.* That *Phillips & Co.* did not pay or renew the notes, so given as aforesaid, by them, to the cashier of the said bank, nor did they communicate with *Clopper* relative to the said settlement with the plaintiffs. That the first of the notes so drawn by *Clopper,* and endorsed by *Phillips & Co.* and discounted for the accommodation of the latter, was taken up and retired on the 5th day of August 1819, by the endorsers, by a substitution of the note of *Phillips & Co.* of that date, made payable to the cashier of the bank for $3000, they paying the discount. That *Phillips & Co.* did also give their seven other promissory notes, of the dates, and for the sums, and made payable at the times herein particularly set out, to wit—one on the 12th, one on the 19th, and one on the 26th of August, 1819, for $3000 each, payable, one on the 11th, one on the 21st, and one on the 28th of October 1819. One other note on the 2d, one on the 9th, one on the 16th, and one on the 23d of September 1819, each for $3000, payable, one on the 4th, one on the 14th, one on the 18th, and the other on the 25th of November 1819. The defendant then gave in evidence, that *Phillips & Co.* were under the impression and belief, that on the delivery of the said notes, substituted as above stated for the original notes of which the defendant was the maker, the notes of the latter were to be given up and cancelled, but that there was no express agreement to that effect. That *Isaac Phillips & Co.* asked for the surrender of the second of *Clopper's* notes, when they gave their second note to the cashier, which was then, and ever after, refused and denied by the plaintiffs, as was also the case with the remaining six. The defendant also gave in evidence, that at the time, but previous to the execution of the mortgage deed aforesaid, it was expressly stipulated by and between *Isaac Phillips* and the cashier of the said bank, on behalf of the plaintiffs, that *Phil-*

*lips & Co.* should not be called on or required to pay any portion of the principal sums, lent as aforesaid as an accommodation to *Phillips & Co.* for the space of three years from the execution of the mortgage; and further, that no suit should be instituted against *Andrew Clopper*, until after the expiration of three years from the date of the mortgage, upon the aforesaid accommodation loan; and that to secure these advantages of time to *Phillips & Co.* and of indulgence to *Clopper*, were the inducements that led *Phillips* to offer to mortgage, and accordingly to execute a mortgage of his real estate to the plaintiffs, an estate which cost him more than $33,000; and that the defendant was and still is largely indebted, and under great embarrassments on his own account. The defendant then moved the court to direct the jury, that if they believed that the plaintiffs did agree with *Phillips & Co.* at the time of executing the said mortgage, that *Clopper* should not be sued on said notes until the expiration of three years from that time, that then the present suit could not be maintained. He also prayed the court to direct the jury, that upon the whole case, if the jury believed the evidence, the plaintiffs were not entitled to recover. Which direction the Court [WARD, A. J.] refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, ARCHER, and DORSEY, J.

*Williams*, (District Attorney of *U. S.*) and *R. Johnson*, for the Appellant. 1. The acceptance of the mortgage, and of the substituted notes of *Phillips & Co.* extinguished the original notes as to *Clopper*, the maker. *Williamson v. Andrew*, 4 *Harr. & McHen.* 482. *Williams vs. Hodgson*, 2 *Harr. & Johns.* 474.

2. *Clopper* being a surety for *Phillips & Co.* and being known to be such to the appellees, was discharged by their giving time to *Phillips & Co.* to pay the note sued upon after it fell due. *Chitty on Bills*, 299, (Ed. in 1817.) *Rees vs. Berrington*, 2 *Ves.* jr. 540. *King vs. Baldwin*, 2 *Johns. Chan. Rep.* 559. *Ludlow vs. Simond*, 2 *Caine's Cas.* 58. *Carstairs vs. Rolleston*, 5 *Taunt.* 551. *Withall vs.*

*Masterman,* 2 *Campb.* 179. *Ex parte Wilson,* 11 *Ves.* 441. *Laxton vs. Peat,* 2 *Campb.* 185. *Collett vs. Haigh,* 3 *Campb.* 281. *Brown vs. Maffey,* 15 *East,* 216. *French vs. Bank of Columbia,* 4 *Cranch,* 161. *Pothier on Exchange, No.* 177, 178, 180. *Chitty on Bills,* 215. *English vs. Darley,* 2 *Bos. & Pull.* 61.

3. The agreement not to sue *Clopper* for three years from the date of the mortgage, was good and valid, and binding on the appellees; and this action being brought before the expiration of that time, was prematurely instituted. *Littler vs. Holland,* 3 *T. R.* 590. 4 *Starkie's Evid.* 1050. *Cuff vs. Penn,* 1 *Maule & Selw.* 21; and *Watkins vs. Hodges & Lansdale,* 6 *Harr. & Johns.* 38.

*Taney* and *Kennedy,* for the Appellees. It has been assumed as a fact, which the record will not justify, that the appellees knew that the notes, when they were discounted, were for the accommodation of *Phillips & Co.* It may be admitted that the appellees knew the fact at the time of taking the mortgage as a security from *Phillips & Co.* but there is no evidence of their knowledge when the notes were originally discounted; nor is there any evidence that the notes were renewed, or the discount paid on them, after the mortgage. The stipulation was that the interest should be paid at the end of every sixty days.

1. The mortgage was not a substitution of the original notes, nor an extinguishment of them. Where a contract is merged, it must be by some subsequent act of the same parties. Where there is a previous joint liability a bond will extinguish a simple contract debt, but it must be a bond for the same debt, and intended as a substitution for the former contract. In this case there is no covenant in the mortgage for payment of the debt. This mortgage was taken as additional security, and does not extinguish the notes which were left as a subsisting debt. Collateral security may be taken without operating to extinguish the original debt *Hurd vs. Little,* 12 *Mass. Rep.* 502. *Chitty on Bills,* 376. Whether or not the appellees received the notes of *Phillips* & *Co.* as a substitute for the other notes, was a fact for the jury, and as such must be proved. *Patapsco Insurance Company vs. Smith, et al.* 6 *Harr. & Johns.* 168.

2. The principle is, that if you give time to the drawer, you discharge all the endorsers, unless they consent to it. So the giving time to a preceding endorser, releases a subsequent endorser. *Chitty on Bills,* 380, (Ed. 1821.) *Carstairs vs. Rolleston,* 5 *Taunt.* 551. Does an accommodation note, known to be such by the parties, stand upon different grounds than a real note? The cases of *Laxton vs. Peat,* 2 *Campb.* 185, and *Collett vs. Haigh,* 3 *Campb.* 281, cited for the appellant, have been both overruled by *Fentum vs. Pocock,* 5 *Taunt.* 192. See also *Chitty on Bills,* 383, *(note,)* and *Kerrison vs. Cooke,* 3 *Campb.* 362. And it is now settled, that there is no distinction in a court of law between real and accommodation notes. *Wood vs. Repold,* 3 *Harr. & Johns.* 125. *Smith vs. Knox,* 3 *Esp. Rep.* 47. *Mallett vs. Thompson,* 5 *Esp. Rep.* 178. *Carstairs vs. Rolleston,* 5 *Taunt.* 551. *Ex parte Barclay,* 7 *Ves.* 597. *Clarke vs. Develin,* 3 *Bos. & Pull.* 363. *Stevens vs. Lynch,* 12 *East,* 38. *Chitty on Bills,* 373.

3. The contract for delay was not a contract for three years indulgence. *Phillips* was to pay the interest; and even if he could not be sued, there is nothing to show that such contract enured to the benefit of *Clopper.* *Carstairs vs. Rolleston,* 5 *Taunt.* 551. If *Clopper* could not have the benefit of a release, he could not have the benefit of the extension of the time. He was no party to the contract, and can take no advantage under it. If the time had been four instead of three years, the act of limitations would be a bar to *Clopper's* notes; for he was not bound by the contract. A covenant never to bring suit, is different in its legal effect, for the purpose of this question, from a covenant not to sue for a limited time. 5 *Bac. Ab.* tit. *Release,* (A 2,) 683, 684. But the contract could not prevent a suit even against *Phillips.* He would be left to his remedy on it if it was violated by the appellees.

ARCHER, J. delivered the opinion of the court. We do not conceive, that by any transactions which have taken place between *Phillips & Co.* and the *Union Bank of Maryland,* in relation to the promissory note, which is in this suit the subject of litigation, there has been an extinguishment of the original contract. The mortgage taken by the *Union Bank*

was only for the purpose of securing to that institution the payment of the securities mentioned in it.    The parties to that instrument never intended that it should constitute a new debt, nor did it bind *Phillips & Company* by any new obligations; but it was a recognition of the existing liability, and was intended to operate merely as a security for its discharge.    It contains an express stipulation that it is to be void upon the payment of the notes, of which *Phillips & Co.* were the endorsers.    The notes given by *Phillips & Co.* after the execution of the mortgage, would not operate as an extinguishment of the notes drawn by *Clopper*, and endorsed by *Phillips & Co.* unless they were received by the bank in substitution, and in satisfaction of the prior notes.    The record contains no evidence from which such an inference would be deducible.

It is urged, by the counsel for the appellant, that being only a security for *Phillips & Co.* and being known to be such by the *Union Bank* at the date of the mortgage given by *Phillips & Co.* by which an extension of time was granted to them, by such indulgence he has been discharged from all liability as the drawer of these notes.    That in the ordinary case of principal and surety, time given to the principal discharges the surety, is a legal position as well settled as any other appertaining to the science.    But its application to a case of this description may well be questioned.

In every bill of exchange, the acceptor, and in every promissory note, the drawer, is in law the principal, and is first liable, and every endorser in the order in which his name appears on the bill or note.    The endorsee may sue all or any of the parties he may choose.    He has the entire dominion of the property in the bill, and a perfect right to make any arrangements he pleases with any of them, but he does it at his peril; for if he thereby alter the situation of any other person on the bill, to the prejudice of that person, he cannot afterwards proceed against him.    Therefore, though he may give time to, or discharge his immediate endorser, he cannot grant indulgence to the drawer or acceptor, and afterwards proceed against the endorser.    The discharge of, or the giving time to, any of the parties liable, does not discharge prior parties, but only those whose names are subsequent to the party thus discharged, or to

whom indulgence is granted. This doctrine is laid down in *Gwynne vs. Heaton*, 1 *Brown's Chancery Reports*, 4, in a note by Mr. *Eden*, and is abundantly supported by the numerous authorities there referred to. Whether the note is one springing out of a consideration actually passing between the parties, or is only an accommodation note, does not seem to make a difference in the law in this respect. It is certain that a contrary doctrine has been held by Lord *Ellenborough*, in the case of *Laxton vs. Peat*, 2 *Campb.* 185. But this decision has, in the *English* courts, been since uniformly considered a deviation from established principles. Its authority was doubted by Chief Justice *Gibbs* in *Kerrison vs. Cooke*, 3 *Campb.* 362; and although in his decision in that case he attempts a distinction between it and *Laxton vs. Peat*,, he does in effect overrule Lord *Ellenborough's* decision, and he expressed his regret that the term, accommodation bill, ever found its way into the law, or that parties were allowed to get rid of the obligations they profess to contract by putting their names to negotiable securities. Lord *Eldon*, in *Ex parte Wilson*, 11 *Vesey*, 411, denounces any such distinction as that attempted to be made in *Laxton vs. Peat*. In the case of *Fentum vs. Pocock*, 5 *Taunt.* 192, the doctrine decided in the case referred to, came in review before the judges of the court of common pleas, and it was there expressly overruled, and it was determined that nothing could discharge an acceptor but a release or payment, and that there was no difference between an accommodation acceptance, and an acceptance for value. Indeed in *Mallet vs. Thompson*, 5 *Espinasse's Rep.* 178, decided five years before the case of *Laxton vs. Peat*, Lord *Ellenborough* made a determination directly contrary to the case of *Laxton vs. Peat*. From this review of the adjudications, we can have no hesitation in pronouncing that the case of *Laxton vs Peat* is not law. Courts of justice seem disposed to consider accommodation notes in the same light, as far as practicable, with notes for value. In this court, in the case of *Wood vs. Repold*, 3 *Harr. & Johns.* 125, it was adjudged that accommodation endorsers, as to their liability to each other, stood precisely in the same relation as did endorsers on notes for value, and that a subsequent endorser paying the amount of

the bill, was not bound to look only for a contribution upon its payment from his co-endorsers, but that he had a right to recover the whole amount from his prior endorser. They were not held at all in the light of co-securities, but each was considered as impliedly engaging to indemnify whomsoever should place his name on the instrument subsequently to him. As it regards the principle upon which notice has been required to be given, there does not appear to be any distinction between the different species of notes. Notice of nonacceptance and nonpayment, is required to be given, that the anterior parties to the bill may take the necessary measures to obtain payment from the parties respectively liable to them; and if notice be not given, it is a presumption of law that the drawers and endorsers are injured by the omission. And in the application of this principle, it is necessary that the courts should inquire into the liabilities of the respective parties to a note or bill, for the purpose of ascertaining whether this injury, either actual or presumptive, could take place. Where a note is drawn for the accommodation of the endorser, he is not entitled to notice of nonpayment, because the presumption of injury could by no possibility arise, the drawer not being answerable over to him upon his payment. But this enquiry into the situation of the parties, their liabilities, and the circumstances under which it is drawn, is not peculiar to accommodation paper, but is applicable also to other notes. Thus a drawer, who has no effects in the hands of the drawee, and has no reason to expect the bill would be paid when it became due, is not entitled to notice. There seems to be a disposition of late manifested by the courts, to discountenance many of those subtle refinements which have, by a kind of judicial legislation, recently crept into the law of bills of exchange and promissory notes, and which have threatened to render it a science of cases merely, and not of principle. That this is the case may be seen by a reference to the opinion of Chief Justice *Abbot*, in *Cory vs. Scott*, 3 *Barn. & Ald.* 619, (5 *Serg. & Lowb.* 401.) When any system of laws is governed by plain and intelligible rules, it becomes known to the public, and the interests of a commercial people will thereby be better promoted than by trusting each case to judicial discretion. We do not believe that the appellant was discharged by the time given to *Phillips & Co.*

It is objected that this suit, having been instituted by the *Union Bank*, in contravention of its agreement with *Phillips & Co.* not to sue *Clopper* for three years, has been prematurely brought.    It is laid down in 5 *Bacon's Ab.* tit. *Release*, (A 2,) 683, that a covenant perpetual, as that the covenantor will not sue without any limitation of time, is a defeasance or absolute release, and is pleadable in bar as such; and a distinction is there taken between such a covenant and one stipulating not to sue for a limited time; and that in the latter case it could not be pleaded in suspension of the action, but the covenantee must seek his redress in an action upon the covenant.    Such is the undoubted law in an action of covenant; but we do not find, from an examination, that it has ever been extended to the action of *assumpsit*; and we do not feel disposed, by adjudication from analogy to extend it; for it cannot but be admitted that it is a principle tending to inconvenience, and producing circuity of action.    Besides, we conceive that by giving the agreement the effect of defeating the action, until the time of indulgence has expired, a greater certainty of justice will be attained between the parties, than by driving the defendant to his action for damages on the agreement.    But independent of this view of the case, we may observe, that the cause of action here, is one which may be sustained under the general count for money had and received; and in such an action the defendant is at liberty to place himself upon such defences, as will shew that *ex æquo et bono*, the plaintiff is not entitled to recover.    We consider him, therefore, at liberty to give in evidence an agreement granting indulgence, where that agreement is founded on a proper consideration, and from which it would appear to be inequitable to allow the plaintiff, by violating his engagement, to recover.    We cannot believe that this agreement is void for want of a consideration, for the inducement to its consummation is the mortgage which was entered into by *Phillips & Co.* to the bank.

Whatever might be the force of the objection, that this agreement not to sue could have no obligation, its consideration relating to land, and the mortgage containing the stipulation between the parties, it is sufficient to say that it preceded the mortgage, and that the testimony does not shew whether it is

in writing or not. This court cannot say it was a verbal agreement, for the purpose of invalidating it. If any reliance could have been placed on the fact of its having been merely verbal, it should have so appeared in the bill of exceptions.

We entertain no doubt but that the agreement is valid, and that *Clopper* may avail himself of it, although made by *Phillips & Co.* One man may surely make a contract for the benefit of another, which will enable that other to institute a suit upon it.

We consider that this suit has been prematurely brought, and that therefore the judgment of the court below must be reversed.

JUDGMENT REVERSED.