## WASHINGTON BANK v. KRUM.

1. ACCOMMODATION NOTE: PRE-EXISTING DEBT. An accommodation note, pledged before maturity, as collateral security for a pre-existing debt, is not, where the time of payment of such debt has been extended in consideration of such pledge, charged with the equities between the original parties.

2. SAME: SECOND TRANSFER. An accommodation note which has been once discounted, and afterward taken up by the party accommodated, does not become void, but may be transferred to a third party before maturity, discharged of the equities existing between the original parties, notwithstanding the second indorsor has, at the time of such transfer, knowledge of the fact that it is accommodation paper, and has been once indorsed and taken up.

*Appeal from Scott District Court.*

WEDNESDAY, JUNE 10.

THE report of referee, finding for plaintiff, was confirmed, and defendant appeals. From this report the following facts appear: The action is upon two notes, made by defendant to Cook & Sargent, and by them indorsed to plaintiff; one for $2,600, and the other for $1,800, dated October 22, 1859, due in six months. As to the first note, there is no defense. The $1,800 note was defended by Krum, who received no consideration on account of its execution, but made it for the accommodation of Cook & Sargent, to enable them to raise money, by discounting it at some eastern bank.

November 15, 1859, plaintiff (a bank in Boston) discounted said note, at the request of, and received the same from, Cook & Sargent, through one of the firm, George B. Sargent, they duly indorsing the same. On the 28th of March, 1860, the indorsers transferred to plaintiff certain real estate in payment of said note, and some other indebtedness owing by them to the bank. At the same time, and simultaneously therewith, the said firm, through Sargent, assigned the $1,800 note to plaintiff, as collateral security for the payment of two promissory notes then executed by them to the bank, for over $4,000 each, payable in six and twelve months. These two notes were given for an antecedent debt owing by Sargent and one Dixwell to plaintiff, and which was then due and payable; and time

of payment was extended, as shown by said notes, in consideration of the assignment of said note for $1,800, together with others, as collateral security.

At this time defendant's note was not due, but plaintiff had notice that it was accommodation paper merely. The understanding between the parties, when the note was made, was, that it was given to enable the payees to raise money thereon for their benefit, by having it discounted at some bank at the east; but plaintiff had no notice of said particular understanding, but did know that it was "accommodation paper." The two notes of $4,000 each have not been paid, and are still held by plaintiff.

For the questions made by counsel upon the above facts, see the opinion.

*Cook & Drury* for the appellant.

I. An accommodation note having been once discounted, and afterwards paid and taken up by the party accommodated, becomes void in their hands, and the subsequent transfer of it to a third person, with notice of the facts, cannot impart validity to it, but such third party takes it subject to all equities existing between the original parties. *Skilding* v. *Warren*, 15 John., 269; *Denniston* v. *Bacon*, 10 John., 198; *Woodhull* v. *Holmes*, Id., 230; *Brown* v. *Taber*, 5 Wend., 566; *Kasson* v. *Smith*, 8 Wend., 437; *McFadden* v. *Maxwell*, 17 John., 188; *Amory* v. *Merrywether*, 2 Barn. & Cres., 573; *Evans* v. *Kymer*, 1 Barn. & Adolph., 528; *Harrisburg Bank* v. *Meyer*, 6 Serg. & Rawle, 537; *Steers* v. *Lashley*, 6 Term R., 61; Bayley on Bills, ch. 12, p. 512 (5th ed., 1880); Story on Promissory Notes, 223, § 190.

II. That an accommodation note, pledged as collateral security for a pre-existing debt, is not discharged of equities. *Coddington* v. *Bay*, 20 John., 636; *Swift* v. *Tyson*, 16 Pet., 1; *Stalker* v. *McDonald*, 6 Hill, 93; *Trustees of Iowa College* v. *Hill*, 12 Iowa, 462; *McFadden* v. *Maxwell*, 17

John., 188; *Meckles* v. *Calvin*, 4 Barbour, 304; *Bank of St. Albans* v. *Gilliland*, 23 Wend., 313; *Bank of Salina* v. *Babcock*, 21 Wend., 499; *Bank of Sandusky* v. *Scoville*, 24 Wend., 115; *Furniss* v. *Gilchrist & Co.*, 1 Sand. (N. Y.), 53; Story on Prom. Notes, § 190.

*Stewart & Armstrong* for the appellee.

I. When a man signs a note for the accommodation of another, he assumes all the liabilities of a maker for value as to all the world, excepting only the party accommodated; and this is true, even though it be known that it is accommodation paper. Story Prom. Notes, 231; Chit. Bills, 85, and the cases therein cited; *Ruggett* v. *Axmor*, 4 Taunt., 734; *Murray* v. *Judah*, 6 Cow., 484; *Fentum* v. *Pocock*, 5 Taunt., 192; Bailey Bills, 166 (5th ed.); Story Prom. Notes, 552; *Bennett* v. *Manley*, Gilmer (Va.), 365; *Walker* v. *Montgomery County Bank*, 12 Serg. & R., 382. The fact that the note had been once taken up by the payees does not change the application of the rule. Chit. Bills, 223; *Burbridge* v. *Manners*, 3 Camps., 194; *Kerbury* v. *Bates*, 1 Ala., 303; *Agawam Bank* v. *Strever et al.*, 18 N. Y., 502.

II. That an accommodation note, passed as collateral security for a pre-existing debt, without any other or further consideration, is not discharged of equities, we admit to be the correct rule of law; but where there is a consideration moving between the parties at the time of the pledging of the collateral, the indorser is protected as a holder for value. The extension of time on the principal debt is a valuable consideration, and that it makes the indorser of the collateral thereto a holder for value is well settled by the authorities. 1 Am. L. C., 336, note to *Swift* v. *Tyson;* *Petrie* v. *Clark et al.*, 11 S. & R., 377; *Dupau* v. *Waddington*, 6 Whart., 220; *Fellows* v. *Prentiss*, 12 S. & M., 462; *Trustees of Iowa College* v. *Hill*, 12 Iowa, 478.

WRIGHT, J.—Appellant presents two points for our consideration: *First*, That an accommodation note, pledged as collateral security for a pre-existing debt, is not discharged of equities. *Second*, An accommodation note having been once discounted, and afterwards paid and taken up by the party accommodated, becomes void in his hands, and the subsequent transfer of it to a third person, with *notice* of the facts, cannot impart validity to it; but such third party takes it subject to all equities existing between the original parties.

Under the facts found by the referee, we have no difficulty in finding the first point against appellant. There is no controversy that, if a note is passed *bona fide* in payment or discharge of a debt, it is good and discharged of equities in the hands of the third party. And it has been expressly ruled in this State that it will be sustained, from like reason, where it is transferred as collateral for a loan or further advancement, or a stipulation express or implied for further time upon a pre-existing debt. Such a transfer is founded upon a valuable consideration, as much as if made in payment of the debt. *Trustees of Iowa College* v. *Hill*, 12 Iowa, 462. As the referee in this case found, therefore, that the bank extended the time of payment upon the pre-existing indebtedness of Sargent and Dixwell, for six and twelve months, in consideration of the assignment of this collateral; in other words, as it is expressly found that the transfer was not a mere voluntary act; that the creditor was subjected to delay, and did not leave the subsisting debt in the condition it was before receiving defendant's note, with the other collateral; it falls clearly within the rule above recognized; and the general proposition stated by counsel for appellant is not applicable. Accommodation paper, in this respect, is governed by the same rule. If it passes for value as above explained, the holder is protected. As between the parties to such paper,

it is without consideration or force. In the hands of a third person, who receives it for value, it is valid, and the innocent purchaser takes it discharged of those equities which would effect it in the hands of the party for whose benefit the maker lent his name. If the party taking it knows that it is accommodation paper, he, of course, will be subjected to all the incidents and equities which attach to such paper, not in the hands of the payee, but of a third person. If he has no such knowledge, then he takes the note upon the assumption, and properly so, that the payee has taken upon himself all the liabilities of a maker for the fullest value, and is liable accordingly. And though he may have notice that it is accommodation paper, and is to be so used, he is not thereby affected by any private arrangement or agreement between the parties as to the particular purpose to which it was to be applied. But of these matters more at length in considering appellant's second point.

The substance of the argument in favor of this proposition is, that the note, when paid by the indorsers, (the parties accommodated,) had spent its force, was dead in law, and that no transfer could impart to it new life or validity, in the hands of those taking it, with knowledge of the facts.

An examination of some of the authorities, which it is claimed support it, first demand attention.

In *Denniston* v. *Bacon*, 10 John., 198, the first sentence of the opinion, shows how very materially that case differs from this, for it is said that, "though the plaintiff sues as indorsee of the note, it is admitted that he sues in behalf of Elliott, one of the original payees; and the merits of the case, and the terms upon which the note was given, are open for examination, equally, as if the suit was between the original parties to the note." Whether the merits of the case, and the purpose for which the note was given, are

open for investigation, are the very points in controversy in the present instance. *Woodhull* v. *Holmes*, Id., 230, only determines that a party to negotiable paper may be a witness to prove facts subsequent to the due execution of the note, and which destroy the title of the holder. (Citing *Bank of Rutland* v. *Buck*, 5 Wend., 66; *Powells* v. *Waters*, 8 Cow., 669, and other cases.)

*Skilding* v. *Warren*, 15 John., 270, recognizes the same rule as in the above case, and the further one, that plaintiffs were not *bona fide* holders, and could not support the action, where it appeared that the note was indorsed for the accommodation of the makers then in good credit, who before negotiation, however, became insolvent, and were then directed not to part with it, which they promised— it also appearing that plaintiff took the note with full notice of all the circumstances. The distinction between that case and this is too manifest to· need comment. *McFadden* v. *Maxwell*, 17 Id., 188, presents the sole question, whether the payee and indorser was a competent witness to prove that the note was given on a consideration which failed, and that the plaintiff was informed of that fact when he took it.

The syllabus in *Brown* v. *Taber*, 5 Wend., 566, exhibits this case: " When a party indorsed an *accommodation note* for another at *sixty* days, with the view of enabling the maker to obtain a discount at bank, and the maker, after refusal by the bank to discount the note, passed it off when it had but eighteen days to run, in the purchase of *lottery tickets* at *retail price*, the vendor of the tickets knowing that he was not a *dealer* in tickets, and having been informed that the note had been in the bank, and the bank marks being upon it, *it was held* in an action against the indorser, that the circumstances combined were sufficient to ·have put the vendor of the lottery tickets on inquiry, and that he was chargeable with notice of the misapplica-

tion of the note, and that the indorser was not liable."
And see in this connection, *Mohawk Bank* v. *Morey*, 1 Hill,
513; *Seneca County Bank* v. *Neass*, 3 Comst., 442; *Smith*
v. *Wyckoff*, 3 Sandf. Ch., 77; *Austin* v. *Vandermark*, 4
Hill, 259.

*Kasson* v. *Smith*, 8 Wend., 436, recognizes the rule
that, "when a note was indorsed for the accommodation
of the maker, with the view of having it discounted at a
bank, and the proceeds applied to the payment of certain
demands, for which a third person stood bound as surety
for the maker, and the note was delivered to the surety,
who, with a knowledge of all the facts, offered it for dis-
count at the bank, where it was refused to be discounted,
but where, at the request of the surety, it was protested
when due, *it was held* that an action could not lie by the
surety against the indorser."

Without doing more, we think we are fully justified in
assuming that none of these cases sustain the position taken
by appellant. If plaintiff took this note with full notice
of all the circumstances, or with knowledge of the parti-
cular purpose of the parties in making it, there would be
some propriety and plausibility in claiming their applica-
bility. When it is remembered, however, that while it is
found that plaintiff knew that this was accommodation
paper—knowledge of the particular object in making it is
expressly negatived—all ground for claiming a parallel is
removed.

As applied to paper of this character, the following rules
seem to be well settled:

The holder, without restriction as to the mode of using
it, may transfer an accommodation note, either in payment,
or as collateral security for an antecedent debt, and the
maker will have no defense. *Ford* v. *Ocean Bank*, 20 Penn.,
384; *Kimbo* v. *Lytle*, 10 Yerg., 417; *Grandin* v. *Le Roy*,
2 Paige, 509; *Boyd* v. *Cummings*, 17 N. Y., 101.

While the defendant may make the defense of a want of consideration against a remote party, when he could have made it against a nearer (the remote party taking the note, with knowledge that it was open to such defense); an exception to this general rule prevails in the case of paper made for the accommodation of another party. (Upon this and analogous questions, see *Grant* v. *Ellicott*, 7 Wend., 227; *Brown* v. *Mott*, 7 John., 361; *Smith* v. *Knox*, 3 Esp., 46.)·

In *Saxton* v. *Peat*, 2 Camp., it was held by Lord ELLENBOROUGH, that an acceptor for the accommodation of the drawer was only a surety for the drawer. The correctness of this rule, however, was denied in *Tenturn* v. *Pocock*, 5 Taunt., 192. And see *Church* v. *Barlow*, 9 Pick., 547; *Murray* v. *Judah*, 6 Cow., 484; *Clopper* v. *Union Bank*, 7 Har. & J., 92; *Bank* v. *Rathbone*, 26 Vt., 19; *Lambert* v. *Sandford*, 2 Blackf., 137; *Price* v. *Edmonds*, 10 B. & C., 578; *Cornise* v. *Kellogg*, 20 Ill., 11; *Diversy* v. *More*, 22 Id., 330; *Bank of Montgomery County* v. *Walker*, 9 S. & R., 229. *Tenturn* v. *Pocock* is followed by the current of authorities, and especially in this country. (And see 1 Parsons on Bills and Notes, 229, Note *p.*, 326, note *w.*) In *Yallop* v. *Ebers*, 1 B. & A., 698, it is said by Lord TENTERDEN that *Saxton* v. *Peat* has been long overruled. (*Contra*, see *Parks* v. *Ingram*, 2 Foster, 283.)

To every person who shall take such a note for value, the parties hold themselves out by their signatures to be absolutely bound, to the same extent as if that value were personally advanced to them, or on their account. Story on Prom. Notes, 231.

When the accommodation is given for a particular purpose, and this is known to the indorsee, a misappropriation of the paper will release the party giving the accommodation from all responsibility. If, however, the person indorsing the same has the power to pass the title, a holder

for value, and ignorant of such misappropriation, will, of course, be entitled to recover. *Evans* v. *Kymer*, 1 B. & Ad., 528; *Small* v. *Smith*, 1 Denio, 583; *Sweetser* v. *French*, 2 Cush., 309.

The giving of time to the principal debtor, who indorses the accommodation paper, as collateral, does not discharge the maker, though the creditor knew that the paper was made for the indorser's accommodation. *Lambert* v. *Sandford*, 2 Blackf., 137; *Collett* v. *Hoigh*, 3 Campb., 281; *Agawam Bank* v. *Strever*, 18 N. Y., 502. And see Bailey on Bills, 166; Story on Prom. Notes, 552; Chitty on Bills, 85; 12 S. & R., 382. The drawer or maker would be liable to an action at any time after his note matured; and neither he nor the indorser could derive any benefit upon this paper, and under this contract, from the agreement to give time upon the principal debt. Thus if Krum had been compelled to pay this note before the maturity of either of the notes given by Cook & Sargent to the plaintiff, his remedy against them would not have been in the least retarded by that arrangement. It seems to us clear that they are separate and independent contracts, and not parts of the same. 18 N. Y., *supra;* and 2 Blackf., 137, and cases there cited. Says SELDEN, J., in the New York case: "If a mere accommodation note, given for the purpose of being used as collateral security for a loan, and made payable to the party for whose accommodation it is given, be assigned to one who advances money upon the faith of it, the holder may bring a suit and recover upon such note, whenever by its terms it is due, whether the money loaned has become payable or not." The same principle obtains where time is given upon a pre-existing debt, in consideration of the deposit of such collateral security. And this conclusion follows, logically, from the view above recognized, that by signing the note, Krum, as to third persons, assumed the position of principal. And

see *Yates* v. *Donaldson*, 5 Maryland, 389; 33 Eng. L. and Eq., 282.

When such paper is delivered to the payee, and the party receiving has no knowledge of the actual arrangement, the payee is authorized to make any use of the same for his own benefit, of which it is capable. *Seneca County Bank* v. *Neass*, 3 Comst., 442.

Applying these general views, we entertain no doubt but that Cook & Sargent had a right to pledge this note a second time, and that appellant would be bound, though before its maturity it had been so pledged for every week or month, and as often redeemed or lifted. Whether the note was made to enable the payees to raise money by hypothecation, or by a direct sale or discount, or for what, the bank did not know. So far as the bank was concerned, therefore, the payees had a right to use it for any purpose beneficial to themselves. As to the third party, the payees may be treated as indorsers, lifting the paper, which, however, did not discharge or satisfy it, as to the maker. He lent his name for the accommodation of the payees, and there was no presumption that the paper was to be withdrawn, or not be again used as a security, so soon as the payees arranged the debt. He could have canceled his obligation, by calling in his paper, and thus prevented its passing into the hands of an innocent holder.

The views heretofore expressed, which treat the collateral and principal notes as separate and independent contracts, to say nothing of the proposition, that the accommodation maker is not treated in the light of a surety merely, sufficiently indicate the distinction between this case and that of *Kelly* v. *Gillespie*, 12 Iowa, 55.

Judgment affirmed.