GEORGE H. PISTEL and SAMUEL G. RIDGAWAY, Jr. *vs.* THE IMPERIAL MUTUAL LIFE INSURANCE COMPANY OF AMERICA OF BALTIMORE CITY.

*Contracts—Promise to Pay when able or when Promisor feels able.*

A contract to pay a sum of money admitted to be due when the promisor is able, may be enforced upon allegation and proof that he is able before the bringing of the suit.

Defendant corporation issued a certificate of indebtedness for a certain sum by which it promised to pay the same when it, the defendant, might feel able to pay and provided all similar certificates shall be paid *pro rata*.   In an action on the certificate, the declaration alleged that the defendant had accepted the surrender of all similar certificates but had failed and refused to pay plaintiff's certificate although able so to do.   *Held*, that a demurrer to the declaration was properly sustained, because there was no allegation that the defendant felt able or knew that it was able to pay, and because there was no such allegation as to the circumstances under which the other similar certificates had been surrendered as would entitle the plaintiff to recover the full value of the certificate upon which suit was brought.

Appeal from the Court of Common Pleas (HARLAN, C. J.).

The cause was argued before McSHERRY, C. J., BRYAN, BRISCOE, PAGE and BOYD, JJ.

*Charles W. Field,* for the appellants.

In the contract or certificate declared on the appellee promised to repay to Thomas S. Ridgaway, the sum of twenty-one hundred dollars, advanced by him to the appellee, said sum being payable to Ridgaway, " at such times and in such sums as said defendant may feel able to pay the same." The legal meaning of these words is that the money should be payable within a reasonable time; or, that it should be payable in whole or in part whenever the company should in point of fact be able to pay the whole, or a part thereof. Any other construction would make the paper invalid and void, and make it mean nothing at all, which must necessarily have been contrary to the intentions of the parties. The declaration alleges the advance of the money by Ridgaway, and the promise of the company to repay it; not not all at once or at any certain fixed date, but at such times and in such sums as the company may feel able to pay the same. Common honesty between the parties and common sense would dictate that this promise meant something, and was intended to mean something. It is, with all due respect, ridiculous to assume that when this contract was made, Ridgaway intended that he should never get his money, and the company intended that it would never pay him, and that this was the mutual understanding between the parties. The intention of the paper was clearly that the money should eventually be paid, and that the company should have the right to pay it in one lump sum, or in instalments, or partial payments, if it could best do that, and that it should pay the whole, or a part or parts of the money whenever it had the ability to do so. The most that the defendant can claim would be, that the plaintiff must prove not only the issuing of the certificate, but the

ability of the company to pay some part of the money secured by it.    If the Court construe this contract, as some Courts have construed contracts somewhat similar, to mean that the money must be paid within a reasonable time, we submit that the certificate being dated April 26, 1893, and the suit having been brought in the summer of 1896, ample time had elapsed for its payment. If the Court shall construe the contract to mean that the money should be paid in instalments as the company was able to pay the same, then it devolves on the plaintiff to prove at the trial said ability in whole or in part on the part of the company.    But in either case the contract would be a legal cause of action on which the plaintiff could recover and which would not be demurrable. I need not state the well-known rule of construction that all contracts are construed most strongly against the granting power or the maker thereof.    Nor need I state the other maxim that the law always sustains written contracts if possible, rather than destroy them; *ut res magis valeat quam pereat*.    The benefit of the doubt, therefore, should be given to the holder of the contract, and the Court should lean strongest to the rule of construction that makes the paper valid rather than invalid. *Davis* v. *Smith*, 4 Esp. 36; *Mitchell* v. *Clay*, 8 Tex. 443; *Salinas* v. *Wright*, 11 Tex. 572; *Works* v. *Hirshey*, 35 Iowa 340; *Ramort* v. *Schotenfels*, 15 Ia. 458; *Brannin* v. *Henderson*, 12 B. Monroe 61.    So also in *Ubsdell* v. *Cunningham*, 22 Mo. 124, suit was brought upon the following due bill: " Due Messrs. Ubsdell & Pierson, one hundred dollars, to be paid over to them as soon as collected at Poughkeepsie, now in the hands of H. B. Potter, at that place."    And the Court held that the money was due and payable within a reasonable time after its date, and that it was defendant's duty to make his collections within such reasonable time, and thus pay the plaintiffs.

And in *Atwood* v. *Emery*, 1 Common Bench (N. S. 110), a contract to furnish goods as soon as possible, was construed to mean within a reasonable time.    Also in *Sears* v. *Wright*, 24 Maine 278, a promise to pay

money " from the avails of the logs bought of M., when
there is a sale made," was held to mean that the money
must be paid after a reasonable time to make such sale
had been given the promisor.    And again in *Crooker* v.
*Holmes*, 65 Maine 199, a promise to pay money " when I
sell my place where I now live," was held to mean that
the money must be paid after a reasonable time had
been given, whether the place was sold or not.    See also
1 *Daniel, Neg. Inst.*, sec. 44, and cases cited; 1 *Waite's
Actions and Defences*, 120 to 124.    In all those cases a
promise was made more uncertain than that declared on
in this case, and in no way was there any intimation by
the Court that they were void for uncertainty.

*Richard K. Cross*, for the appellee.

There was no error in sustaining the demurrer of the
appellee to this *seventh* count; the alleged contract, as
therein stated, is neither certain, nor capable of being
made certain.    It was not intended to create, and was
incapable of creating legal obligations.    The sum named
in the alleged certificate was to be paid " at such times
and in such sums as it, said defendant, might feel able
to pay the same."    There is not even an allegation that
the defendant (appellee) *felt* able, nor that it was called
upon at such times as *it felt* able, to pay.    The alleged
contract is too vague and uncertain to create any legal
obligation.    *Blakistone* v. *The German Bank of Baltimore
City*, 87 Md. 302; *Thompson* v. *Gortner*, 73 Md. 475;
*Barnard* v. *Cushing*, 4 Metc. 235; *Nelson* v. *Von Bonhorst*,
29 Pa. St. 352.

Construing the contract alleged in the *seventh* count
in the most favorable way for the appellants in this case,
it leaves to the appellee the absolute right to determine
at what time and in what sums it shall pay the sum
named, and leaves to the appellee the absolute right to
determine whether it *feels* able to pay at all.

There was no error in sustaining the demurrer to the
*seventh* count, because the alleged contract therein
stated is subject to conditions, the performance of which
is not alleged.    It says, " *provided* that all certificates

of similar import should be paid upon *pro rata*, and that no preference should be given to any such certificate over others, and avers that said company (the appellee ' has *received and accepted a surrender* and *extinguishment* of all the certificates of similar import.' ". A surrender and extinguishment is not payment, it is only a further acknowledgment that no obligation exists. There is nothing beyond this alleged in the count, and after the other certificates of similar import had been surrendered to the appellee and extinguished, they could not be paid upon, *pro rata*, and preference would be shown by the *payment* of the certificate sued upon in this case. The plain and direct statement is made by this *seventh* count, that no claim of obligation has been made by the late holders of certificates of similar import. It is not proper to speculate as to their intention. The intention not to create an obligation is *expressed* in the alleged certificate set forth in the count, and the count avers that all holders of certificates of " similar import " have " *surrendered* " them to the appellee, and that they have been " *extinguished*," not *paid*. A promise on condition is absolutely void, unless the condition be performed. It will not remove the bar of limitations. *Higdon* v. *Stewart*, 17 Md. 105; *Wilmer* v. *Gaither*, 68 Md. 342.

The declaration in this case was bad because it joins counts in assumpsit with counts in covenant. In passing upon the demurrer filed by the appellee the Court will give judgment against the appellants because they committed the first error in pleading. The case of *Smith* v. *Smith*, 66 Md. 219, is precisely in point. The Court there says: " The demurrer filed by the plaintiff to the defendant's pleas brought the entire pleadings in the cause under review, and as the plaintiff committed the first error in pleading, judgment should have been rendered against it."

Boyd, J. delivered the opinion of the Court.

The declaration filed by the appellants against the appellee contains eight counts—the first six being the

common counts and the other two on instruments under seal. There was no demurrer filed to the whole declaration on account of the misjoinder of actions, but there was a demurrer to the seventh count which the court sustained and the parties went to trial on the others, which resulted in a verdict for the defendant. Judgment having been entered, the plaintiffs appealed and the only question before us is the ruling of the Court on that demurrer. The first objection to this count urged at the argument, was that it alleges that the defendant promised to pay the amount of " the obligation under seal or certificate of indebtedness " described in it " at such times and in such sums as it, said defendant, might feel able to pay the same," and it is contended that there can be no recovery on an instrument subject to such conditions. Although we are of the opinion that such allegations as are necessary are not made, even if a suit can be maintained on this instrument, we will refer to some of the cases in which the Courts have determined the effect of language somewhat similar to or resembling that before us.

There is some apparent conflict between them owing to the fact that many of the cases turned on the question whether the paper sued on was a promissory note, or a negotiable instrument, and not whether there could be a recovery in any form of action when such limitations had been inserted in the evidences of debt sued on. Most of the decisions hold that a suit on an obligation payable " when the maker is able," or words to that effect, can be maintained upon an allegation and proof that he was able before suit brought. In *Davis* v. *Smith*, 4 Esp. Rep. 36, the defendant admitted he was " bound in honor and should pay when he was able." LORD KENYON held that he was liable upon proof of ability to pay. That was followed in *Mitchell* v. *Clay*, 8 Texas 443. In *Salinas* v. *Wright*, 11 Texas 572, the suit was on an instrument which said, " which sum I bind myself to pay so soon as circumstances will permit me." It was held not to be a promissory note and that the plaintiff could not recover *on that instrument alone* without proof

of the ability of the defendant to pay. In *Veasey* v. *Reeves*, 6 Ind. 406, a note was made payable by the maker " when able " and it was held that it matured so soon as the maker was able. In *ex parte Tootell*, 4 Ves. Jr. 372, there was a promise to pay " at such a period of time that my circumstances will admit without detriment to myself or family and not to be distressed upon any account whatsoever until such time that my circumstances will be as above described," and the conclusion was that an action did not lie, without proving that he was in good circumstances.

There is another class of cases in which the makers of the instruments have undertaken to limit the time of payment to their convenience. In *Works* v. *Hershey*, 35 Iowa 340, it was held that the maker of a note which read " on demand after date I promise to pay . . . payable at Cincinnati when convenient " was bound to pay it within a reasonable time. The Court said the latter words could not nullify the words " on demand after date I promise to pay." In *Lewis* v. *Tipton*, 10 Ohio St. 88, a note payable " when I can make it convenient with ten per cent. interest till paid " was held to create a legal liability upon the maker and to be payable within a reasonable time after its date. In *Smithers* v. *Junker*, 41 Fed. Rep. 101, JUDGE GRESHAM held that a note " payable at my convenience and upon the express condition that I am to be the sole judge of such convenience and time of payment " may be enforced by an action after the expiration of a reasonable time, on demand and refusal of payment. In *Barnard* v. *Cushing*, 4 Metc. 230, a note was given by which defendants promised to pay a sum named on demand with interest. At the same time the payees endorsed on the note " we agree not to compel payment for the amount of this note, but to receive the same when convenient for the promisor to pay it." It was held that no action could be maintained upon the promise. But in *Page* v. *Cook*, 164 Mass. 116, the suit was on a note which read " on demand after date I promise to pay . . . payable when payor and payee mutually agree," and it was construed

to mean that it was payable on demand when and after the payer ought reasonably to have agreed.   The Court referred to the case of *Barnard* v. *Cushing* and emphasized the fact that by the endorsement on the note in that case the payees agreed that they would not compel payment, and concluded its reference to it by saying " possibly if the question arose now a different result might be reached from that arrived at in that case."   In *Ramot* v. *Schotenfels*, 15 Iowa 58, after the maturity of a note the parties endorsed thereon this agreement: " Renewed for an indefinite time at ten dollars interest per month and the whole amount then to be paid when both parties may agree."   It was held that as no definite time was fixed for payment, the note was payable within at least a reasonable time.   In *Brannin* v. *Henderson*, 12 B. Monroe 61, an acceptance on the back of an order that, " I will see the within paid eventually," was held payable within a reasonable time, if not forthwith. In *Crooker* v. *Holmes*, 65 Me. 195, a note was made " payable when I sell the place where I now live."   Held, that the maker was bound to sell the place within a reasonable time and failing in that the note was due.   We have thus referred to a number of cases which show that the tendency of the Courts is to hold the makers of notes and other written obligations responsible whenever they admit indebtedness, but are only uncertain as to the time of payment.   In the last mentioned case the Court said: " the debt is due *in praesenti*.   Its payment is postponed to a future time, but the debt nevertheless exists. The debt is absolute, the time of its payment indefinite." All of the authorities seem to agree that on an obligation to pay " when able " the holder can recover upon proof of the ability of the promisor to pay; and when it is payable " when convenient " or "eventually," or like expression, the Courts have generally held it is payable within a reasonable time.   The case which seems to be most in conflict with any of the above, and indeed the only one we have found that is difficult to reconcile with them, is that of *Nelson* v. *Von Bonhorst*, 29 Pa. St. 352. There a party gave an instrument of writing, under seal,

acknowledging an indebtedness to another which he agreed " to pay whenever in my opinion my circumstances will enable me to do so." It was held that such contract imposed no legal obligation and that no action would lie upon it, even though the Court and jury should find that the party was of sufficient ability to pay the debt, because by the terms of the contract the debtor was made the sole judge of that fact. But we cannot give our assent to that decision without some qualification. If the indebtedness is unqualifiedly acknowledged, as is done in the certificate sued on in this case, but the payment is simply postponed until the circumstances of the debtor will enable him to pay, he is morally and legally under obligations to pay when that condition exists, and although he is made the judge of the fact, his judgment must be honestly exercised. Upon the allegation and proof that his circumstances did enable him to pay and that he fraudulently refused to do so, although he knew he was able, such a promisor should be held liable. Any other conclusion, it seems to us, would encourage dishonesty and unfair dealings. The question of fraud was not raised in that case and hence the Court may not have felt called upon to qualify its decision or the language used, which was of course only intended to apply to the facts before the Court.

We do not understand a case of this character to be governed by such as those where it is stipulated that an article is to be furnished subject to the approval or satisfaction of the proposed purchaser, which approval or satisfaction is made a condition precedent to the right to recover compensation or the contract price. There the defendant does not get the plaintiff's property and then wilfully refuse to pay for it, and as the contract is made subject to the condition that he shall approve of or be satisfied with it before accepting it, the Court will not dispense with the condition and say that the article was of a quality or character that ought in reason to have been accepted as satisfactory. But in cases such as this the defendant has received the money, or other consideration, and has acknowledged his indebtedness

and the only question is when it shall be paid. The parties contract with the understanding that it is to be paid when the conditions mentioned exist, and if they do exist it would be a fraud for the promisors to wilfully refuse to pay, notwithstanding their ability to do so.

Now let us apply the law as thus established to the case before us. If this certificate of indebtedness had been simply to pay " at such times and in such sums " as the defendant was able, upon proper allegations and proof that it was able to pay the whole, or such part as gave the Court jurisdiction, the plaintiffs could unquestionably have recovered—the amount being payable when the defendant was able, and it being shown to be able, the obligation would have matured by the very terms of the contract. But the terms are when it might " *feel able.*" To say that a corporation can *feel able* may seem odd, at first glance, but, as it must act through its agents, it means when its officers, directors or agents, whoever they may be that have charge of such matters, feel able—that is to say, as we understand the use of that term, when they are " conscious of being " able or *know* it is able. It was necessary to make such allegations as would bring the defendant within the meaning of the contract. This count should not only have alleged that the defendant was able to pay, either the whole of the obligation or whatever part of it the plaintiff proposed to prove it could pay (so as to embrace the terms " at such times and in such sums," etc.), but that it *felt* able, of *knew* it was able, or something that would be equivalent to the terms used in the certificate of indebtedness sued on. If the facts so justified, there could have been added the allegation that it fraudulently refused to pay, etc. If the declaration had so alleged we think it would have been sufficient so far as this part of the certificate of indebtedness is concerned, under the authorities we have already cited. The only cases referred to by the appellee which seem to be to the contrary are those of *Barnard* v. *Cushing* and *Nelson* v. *Von Bonhorst*, and what we have already said will relieve us of a further discussion of them, excepting to add that the case of

*Smithers* v. *Junker, supra,* is in conflict with the Pennsylvania case. We do not understand that the cases of *Blakiston* v. *German Bank,* 87 Md. 302; *Thompson* v. *Gortner,* 73 Md. 475, and other authorities cited in connection with them, in any wise conflict with these views. In them the question was whether valid contracts had been entered into and it was determined that the terms used were too vague and indefinite to enable the Court to so find. But in this case the contract is sufficiently definite—the amount of the indebtedness is clearly stated and the only question in doubt was the times of payment and, as we have already said what the contract means in that respect, a recovery cannot be denied by reason of the contract being too vague and uncertain. As it was not to pay *when able* but when it " *might feel able,*" the statement in the *narr.* that the defendant " has failed and refused to pay the certificate herein named although able to do so " was not sufficient and the demurrer was properly sustained for that reason.

But this count is defective in another respect. The promise to pay was further qualified by saying " provided, that all certificates of similar import should be paid upon *pro rata* and that no preference should be given to any such certificate over others." That is attempted to be avoided by alleging that " said company has received and accepted a surrender and extinguishment of all other certificates of similar import." There is no allegation that anything had or had not been paid on them, nor is it stated under what circumstances the other certificates had been surrendered and extinguished. We have nothing to inform us as to the circumstances under which they were issued, and are confined to the *narr.,* but suppose the holders of all the other certificates only received a small sum—five or ten per cent. for example—and then surrendered their certificates, it is apparent that the appellants could not recover, *in an action on this certificate,* more than was paid to the others, without at least some allegation and proof of fraud or collusion. Or if all were surrendered and extinguished without any payment on the belief that

they were worthless or for other reasons satisfactory to the holders, how can the appellants recover on this certificate—at least without alleging and proving something that will avoid the effect of that provision, if that is possible? The very contract sued on expressly prohibits the recovery beyond the amounts paid on the other certificates. If the holders of them chose to surrender them without any payment, it may be unfortunate for the appellants, but that is the contract their assignor made with the defendant, and in the absence of fraud or collusion the effect of the surrender of these certificates on the plaintiffs' right to recover is fatal and cannot be avoided. There is not enough in this count to entitle them to recover on the certificate sued on and the demurrer was therefore properly sustained.

*Judgment affirmed, appellants to pay costs above and below.*

(Decided December 20th, 1898.)